We will now begin with argument in our first case for the day, which is Roberts v. Springfield Utility Board. And I believe that Mr. Franz, right? Yes. Please proceed. Please, Mr. Court. That delay was so long, I forgot what I was going to say. I kind of want to narrow the is the First Amendment, Ninth Claim for Relief, which is due process, and the Twelfth Claim for Relief, which is State Claim, 6598-230. The issue on the due process claim is simply stated and poses a very interesting question. We know, and we've all practiced long enough to know, that you get a pre-termination hearing and then sometimes a post-termination hearing depending on the entity. And we know that the pre-termination hearing must be given regardless of the facts of the case. And we commonly say you give notice of the charges, opportunity to respond. And a lot of times the notice will say, you know, you may bring your witnesses to the hearing to explain everything. In this case, the notice said, you're on and anticipated that there'd be a hearing in front of Jeff Nelson, the final decision maker. The problem was that the notice said, if you talk to any employees of sub, you're going to be terminated. And then later on, we went and met with the investigator and met with her a second time. And the second time she expanded the qualification, you cannot talk to a potential witness, you can't talk to a witness, and you can't talk to former employees of sub. So basically, you cannot present your case now. Counsel, let me ask you what you're saying. Now, you of course have put in your brief. My understanding of the facts is that while this was said to your client on a time-limited basis during the investigation, you were not limited as counsel or whoever was counsel. Anybody else could talk to them. He could talk to the press, he could talk to anybody he wanted to. It was just they wanted to maintain, if you will, the integrity of the investigatory process. But let's just say for a minute that what they did was supposedly wrong. What case or statute would you cite that you believe gives your client the right to interview witnesses in this context? Okay, let me answer your first part. I did not, if you read that, the letter, it doesn't say the attorney can speak. It says the person, I would be an agent of the person. Taking your second part, according to that law, you can tell the protestors, police protestors, you can't protest, but your attorneys can. In this case, my client was going to . . . Okay, wait, wait, wait. I think you're going off from what at least I asked. What I ask is what authority would you cite, either statutory, regulation, or case law, that says that your client, in the context that he worked, had a right to interview witnesses when his integrity was being questioned as part of this process? What would you cite? I would cite Matthew v. Eldridge. And you think that buttresses your case? Yes, because it says that you must offer them an opportunity to respond in a meaningful manner. A meaningful manner. It's not telling you you're going to be terminated if you talk to witnesses. Well, obviously people can disagree about that, but you had two opportunities to appear, your client did, to explain his position. He declined to appear both times, right? No. He appeared at two interviews with the investigator, and then on Friday, December 6th, he was told, on Tuesday, you can now meet with the staff and present your side of the story. So he was given notice of his pre-termination hearing. I understand your argument to be that even though the speech restriction was lifted at that point, there was not enough time. But did you request for additional time or ask for the hearing to be rescheduled so that you could interview witnesses at that point? The ban was still on. No, the ban was lifted once the investigation was concluded by the many statements of counsel saying that this would apply only while their investigation was pending. No, we did not appear at the hearing or request any time. And as my colleague pointed out, you didn't ask for a change of venue or additional time to make your presentation, right? Correct. I guess what I struggle with, I mean, I understand your client was very unhappy with what happened, but there was certainly plenty of due process. He got plenty of opportunities to talk to people and to present his side of the story. There was a limited time cabined restriction on his talking to witnesses, but ultimately he could present his whole story and talk to those people once that time period was up. Isn't that correct? After his termination, he was offered an evidentiary hearing. Okay, but he got to present his story after he had talked to people if he wanted to, right? Well, I disagree. Okay, tell me why. Okay, because he was restricted up until that Friday to talk to anybody. He had nothing to present other than what he already said, and the issues was his inaccurate statement of the timeline. He needed witnesses. Excuse me, were you his lawyer at that time or was someone else? I was his lawyer. Okay, weren't you free to talk to the witnesses? He could have said, do you talk to Joe, Sally, and Jim. They know about this. And I did not understand that the prohibition of my client talking gave me the right to talk. But it's clear that you did have that right, right? Isn't that correct? Doesn't the record make clear that you did have that right as his attorney to interview those people? And with the agreement I made with that client, I wasn't going to do the legwork. Okay, but that's between you and your client. But the right was there. You had the opportunity on his behalf to talk to the people that he felt were his witnesses, right? Before the hearing. Yes. Okay. But what I want to also emphasize on that last one, from now on in Oregon, every pre-termination notice is going to advise these people they're going to get fired if they talk to their... Counsel, I want to go back to that, what you're calling pre-termination notice, what I would call the notice of investigation, which is when the, or notice of administrative leave, which was what was first given to your client. It said that the pending investigation was regarding dishonesty, regarding unscheduled time off. And then in the directive that you're objecting to, it said any contact with sub-employees, including your supervisor regarding this matter will constitute gross insubordination. So as far as I read that, the scope of the restriction was limited to the subject of the investigation. Well, but the first sentence clearly says... Right, but if you read that first sentence in context, the only... You only get to the threat of discipline when you see that it says any contact, any contact regarding this matter will constitute gross insubordination. So why isn't that limitation on the scope of the restriction make this restriction not about speech of a matter of public concern? Okay, so we're now switching to the first penalty. Okay, so the first sentence is an absolute ban on speech. The second, restraint on speech to take place, okay. The second restriction is also on speech to take place. The speech has not yet taken place. So how do you know if it was made as a matter of public, by a private citizen or not? No speech has taken place yet. And how do you know what the topic of the speech? No speech has taken place yet. So it's our position, and when you look at that... So let's just say you get this and you object to it, okay. So you want to go to the board of directors, you want to go to the supervisors and complain about this. You can't or you'll be terminated. Wait a minute, wait a minute, wait a minute. You're saying that he was told he couldn't go to the board or anybody else? I thought he couldn't talk to witnesses on his behalf. Where do you get this limitation that he couldn't talk to the board or somebody else? There's no mention of witnesses at all in the letter from Mr. Fordham. Mr. Fordham's letter says it as already repeated. While this matter is being investigated, you are prohibited from engaging in communication in any form with any employee of SUB other than me. And the board of directors are not employees, are they? Here's the point. Any contact with sub-employees, including your supervisors, regarding this matter will constitute insubordination. We can't go above Fordham because anybody above him is an employee. We couldn't contest it. It's a complete ban, and if we go to his supervisors, we'll get fired. If we go to the board, we'll get fired. The only way we could stop this is with the lawsuit I filed on October 6th to declare this and get an injunction. I think there's a serious question as to whether a member of the board of supervisors would be considered an employee of the agency. But even putting that aside, it says that they could get permission to speak to someone. Was there any attempt to get permission to make the kind of speech you're suggesting your client might make? No, and the case law is clear that you don't, for example, in the protest cases, you don't have to get permission from somebody to go on the sidewalk and protest. You can't condition a complete ban on permission. I want to follow up on this idea of whether this could even be speech of a matter of public concern. Our case law says that speech concerning an individual grievance or disciplinary matter is typically not a matter of public concern. How do you get around that case law? Because the speech has not yet taken place. But the only speech that you've identified in any of your arguments is speech related to this identified as what your client wanted to engage in. How do you get around our case law? By his declaration, the declaration of Todd Roberts, where if he had been allowed to speak, he would have spoke and complained of mismanagement, unethical conduct, and this prohibition itself. But he wasn't barred from doing that. Tell me in the paperwork that your client was barred, for example, from going to the press and saying, this place is just totally mismanaged. They're doing this and they're doing that. They're doing this wrong and that wrong. There's no prohibition on that, is there? No, but the press can't solve the problem. The press can't relieve this unconstitutional condition. The press has no information about the case at all. He could go talk to anybody, but he couldn't talk to the key people he needed. He could go on the governor. The governor can't overrule this, this conduct. So it doesn't help to go talk, to be able to talk to someone else. Forgive me. I just, um, the facts that you're reciting and the facts that I read in the record are quite at variance. Forgive me, but I just, um, my understanding is that your client was limited for a brief time talking to witnesses. They were concerned that he would, if you will, corrupt. You know, it's the old idea of interference with witnesses. That's what they were concerned about. But they didn't bar it beyond that. And it was for a short period of time. Once that's done, they had every right to do it. And by the time you got to these disciplinary hearings, you had a full right to talk to them. He did. And you chose not to show up at the hearings. Either time. What am I missing? Okay, to guide you to, you say, read the record. So I read the letter, read the declaration of Todd Roberts, and Todd Roberts was supplier of the information. He was going to talk about matters of public concern. And the speech had not yet taken place. So how do you know what it was about? It's a complete ban. But what my colleague just mentioned to you, how do you get around our case law in this area? I mean, this is almost a ghostly, like some phantom out there that you're trying to ban. There's got to be a specific right that's clearly his under the Constitution. I mean, we're not talking about, uh, you know, uh, what was it? Neff versus Minnesota or something like that. This is not that. This, this is a relatively limited ban on, from their perspective, corrupting witnesses. They were, they had accused your client of cheating, misrepresenting what he was doing. They had every reason, I think, to be concerned that he would maybe corrupt some witnesses. So during a brief period of time, they said, don't talk to him. Eventually that ban was lifted before you went to the hearings and you didn't show up. Twice. Right? But the stat, we've already gone over it. The stat, you are prohibited from engaging in communication in any form with all employees. There's 161 employees. 161 employees were not witnesses to this action. This was a complete bar of speech of 161 people. Regarding the subject of the investigation for a limited period of time. Three months. I, I do not read. So how does the scope of that restriction, which is limited to speech to other employees regarding the subject of the investigation, how does that restraint implicate speech of a matter of public concern? What in those terms of that restriction actually prevented your client from going to the Board of Supervisors? Any contact with sub-employees, including supervisors. You just insist on reading the first sentence without reading the rest of the paragraph. No, I, that was from the second sentence. Okay. That what I just mentioned. You don't have much time left. Do you want to save what you got for rebuttal? Yeah, I'll save my 35 seconds. Okay, great. All right. Very well. So we have two different lawyers responding. First, who's coming out first? Good morning, Your Honor. Beth Plass. Okay, very well. And you have seven minutes and your co-counsel has seven as well, correct? Or eight? Eight. Again, seven, seven. You've got 15 minutes, so we'll add. Who's having the eight? I'm taking the seven, I think. Okay, and you're having the eight. Okay, excellent. May it please the Court, Beth Plass on behalf of Jana Spru, Bob Fondren, Jeff Nelson, and the Springfield Utility Board. Mr. Roberts was directed not to speak to his coworkers about an investigation into employment-related misconduct during the pendency of that investigation without prior permission. That instruction did not violate the First Amendment for two reasons. First, the restriction did not address matters of public concern. It related only to the investigation. That was clear from the notice of paid administrative leave and the subsequent clarifications and requests by Mr. Roberts' own counsel about who he wanted to lift the restriction to speak to and why. Judge, let me just ask you this to make sure my understanding is correct. Did Mr. Roberts or his counsel ask the, I guess it would be the Board, for permission to talk to anybody in particular that would have, if you will, gotten around the ban as they understood it? The first request was made once counsel was involved on September 30th of 2019, and this is in the supplemental excerpt of the record at page 25, when Mr. Franz requested that Subb remove the restriction placed on Todd not to talk to any employees of Subb, he cannot defend himself when Subb takes away his right to gather information for his defense. That was the first request. And what was the response? The response is in the supplemental excerpt at page 29, and the request was denied. The statement was that Mr. Roberts would have an opportunity to participate in his defense in the event that Subb decides to pursue a disciplinary proceeding. But in the meantime, the restriction stands. And was there a later request? Well, there were certainly further discussions during the second interview, which occurred on October 8th. The meat of those discussions are in the supplemental excerpt of the record at 138 and 139, and that's where Mr. Franz was clarifying with counsel about whether he was permitted or not to contact witnesses on behalf of Mr. Roberts, and it was made clear to him that he was permitted to do so. So, and this is my understanding of it as well, there was no ban on Mr. Roberts' counsel contacting any of these employees that Roberts thought might be helpful. Is that correct? Correct. So he could have interviewed them, could have asked them for a deposition or statements or whatever. So the restriction was just limited to Roberts himself contacting these people during this limited time period. Is that right? That's correct. How would he have known that? I mean, the restriction says you are prevented from doing this. As your opposing counsel has noted, an attorney is an agent for someone, and anything an attorney does for a client is on behalf of that client. So how would they have known that? And then second question, was there any, did Roberts or his attorney ever ask for clarification on that point of what the attorney could do? To your second question, yes. And that's on the supplemental excerpt 138 and 139 is a literal transcript of the clarification respecting what Mr. Roberts' attorney could do, and that was in the second interview. As to the first question, again, our position is that as to the matter of public concern, it certainly doesn't matter whether or not Mr. Roberts or his attorney could contact witnesses because that doesn't go to that issue, in my view. So we don't still meet that hurdle. It doesn't, frankly, matter. So let me follow up on that point. So, you know, what is this original notice about you can't talk about the investigation or you can't talk to employees mean? So the first sentence, as some of the questioning of your opponent brought out, the first sentence is very broad, can't talk at all. And then the second sentence seems to limit that to say can't talk about the investigation. So let's assume for a second that it's you can't talk at all, can't talk to the employees about anything. Do you think that that implicates matters of public concern? Yes, I do. And I think you should still uphold the restriction under the Pickering close and rational test on prior restraints. So if we can interpret that notice to say that Roberts could not talk to any employee about any matter at all, we should say that that implicates speech concerning a matter of public concern and go to the Pickering balancing. That's your position? Yes. And moving to my position on the Pickering balancing, the case law in this area is sparse. But the closest case is the Satter case, which was affirmed in an unpublished opinion by this court. But I would also note that it was cited in Moonen v. Tice in footnote 10 for essentially saying that that restriction in Satter was significantly different and we essentially upheld it in that case than the restriction at issue in Moonen. The cases that the court has looked disfavorably upon prior restrictions, prior restraints on speech, Moonen and Tice, duration unlimited in time, perspective, the audience in those cases much broader than here, everyone essentially in both Moonen and Tice. And finally, the impetus for the restrictions in those cases and the justifications given, the court just gave short shrift to. Essentially in both cases, the public entities admitted that the reason that they placed the restrictions on the employees was that they were trying to prevent whistleblowing type of activity from getting out into the public domain. That cannot be argued in this case. There is no dispute that Mr. Roberts could have gone to the media, could have gone to the legislature, could have gone to anyone except for his fellow employees about these issues. And so under the Satter case, which was affirmed, and then a pair of circuit cases, again cited in Moonen, the Farhat case, and then cited in Farhat is the Thompson case from the Sixth Circuit, again gives us this distinction between in the Farhat case, don't talk to your co-employees. In the Thompson case, don't talk to the media. That's not okay, but the don't talk to your co-employees is okay. What we're really trying to prohibit here is government employers muzzling, essentially whistleblowing. That's not present here, so for that reason, it should affirm. What time period are we talking about where there was the complete ban that my colleague referred to? What's the actual time framework? I don't think the time frame in this case, because Mr. Roberts, once his counsel was involved, was certainly asking questions and it was clarified for him. I think in the first interview, the declaration of the attorney who gave the instruction states that... I mean, are we talking a month, a month and a half, six weeks, a week? So the instruction was issued on the 12th of September. The first interview occurred on the 19th, but I would like to point out that the Satter case, the instruction was a complete ban on discussion with all employees and was in place for two months and two weeks, I think. So 90 days, the distinction is not material. But in this case, how long are we talking about the complete ban? Well, again, I don't think there was a complete ban, but if you were to go there, I think that it could only be argued that it was in place for seven days. Seven days, okay. All right. Questions by either of my colleagues? Very well. So we'll hear from your co-counsel, please. May it please the Court, counsel, Janet Schreyer on behalf of the attorney defendants Kathy Peck and Diane Rubinoff. I agree with the comments of my co-counsel. I'm here to address the constitutional issues that are before the Court, and I would like to, well, as I believe you understand, the trial court didn't address the first pickering element and assumed for the purpose of argument that the speech in question was of public concern. But we think this Court can and should simply dispose of it on the first element because reading each of the communications between the employer or the conversations with my clients related to the speech restriction, it was clearly related to this private investigation of a private internal employment matter and was not a matter of public concern. Let me ask you this. Aside from the whistleblowing context, which your co-counsel has mentioned, is it generally the rule that when you're talking about employment issues, that those are almost always held in confidence, indeed sometimes by state law, until there's something that has to be disclosed to the public? I believe so, but I can't tell you. I can't give you a... But by and large, it's a fair statement that if you're an employee and you're accused of wrongdoing, you don't want the press to know about it. You don't want your co-employees to know about it. You want it closely covered, unless, of course, you're making a whistleblower claim. So from your perspective, I gather you're saying this is all normal practice here. We don't want these things out. The employees generally don't want these things out. This just follows that pattern. Is that correct? Exactly. Yeah, and certainly employers follow that perspective. They're not letting people know someone's on, you know, had some kind of problem and truthfulness and that kind of thing. Let me ask you this. Was there any communication by the investigating authorities here to any other employees on the other side saying you may not talk to Roberts? Was there anything like that? No. I don't believe there's anything in the record regarding that. And to the extent plaintiff's counsel describes the first notice of investigation as having a very broad term to it as far as the prohibition, the interviews by my client, the attorney interviewer, it's very clear that the nature of the restriction is only to protect the integrity of the investigation, and it was intended to be only while the investigation was ongoing, as the Court has already noted. Let's change the facts a little bit. Let's assume that you had the initial language, as your co-counsel has read, that seems on its face to be a complete prohibition, and it had said for the next six months you can't do this. Would the difference between seven days, which I believe your counsel suggests is what we're dealing with, versus six months, would that make any difference in our analysis? I don't think in that time frame that it ought to, if that's the time it takes for the investigation, because public employers are entitled to protect the integrity of their investigation. I mean, there could be something like COVID comes up or, you know, things happen. So I don't think a six-month time frame would make a difference. Of course, it wasn't that long here. But particularly when expressly it was stated that counsel could communicate with other people, this ban didn't apply to Mr. Roberts' counsel. And in the very first notice of investigation, it expressly says you don't contact anyone without going through me. And as the Court had noted, he did not try to go through and ask for permission specifically, he asked for the whole ban to be lifted, but didn't ask to interview a witness. And so we think that's important. So we think that the first pickering element, and that is whether the employee was restricted from talking about a matter of public concern, should resolve this matter because this only has to do with this investigation for the employee's dishonesty and not beyond that. And effectively, plaintiff has been eliminating or eluding words that were in these notices to try to make it sound bigger. And if you actually look at the words, it's very clear they're talking about this investigation, these witnesses, until the end of the investigation is over. But even if you got to the second element of the pickering test on the First Amendment, clearly the district court weighed the interests of the employee and the employer, and during this limited period of time to protect the integrity of the investigation and to avoid having influence or coercion by the employee on witnesses, it was appropriate to have this kind of restriction. Let me ask you about the actual hearings that were offered to Mr. Roberts. My understanding is that neither Mr. Roberts nor his counsel appeared in either of the, if you will, opportunities to respond and, if you will, contradict the accusation against him. Is that right? That's correct. And his response, I believe, to the court was, well, he was already fired. No, it was a notice of proposed discipline, and it gave him an opportunity to show up and give his side of the story. And particularly given the kinds of allegations we have here, his very own dishonesty, one would think if he truly had an interest in that and not playing some kind of game, he would have showed up. And he didn't show up, nor did he. He just didn't. And he had counsel. His counsel didn't show up. He did not ask for more time. He, again, never asked to follow up on the notice to specifically interview any witness or have any opportunity to do that. That just never happened here. And from the board's and your client's perspective, there was never any communication to Mr. Roberts or his counsel that told him that he had, in quotes, been fired, in quotes. Is that correct? Prior to the hearing. Right. The hearing that he didn't show up for, the one on December 10, he wasn't fired. It was a notice of proposed termination, and the whole purpose of it was a due process hearing for him, an opportunity to provide his side of the story before the employer decided what to do with regard to the termination. Does the record indicate whether anyone from the disciplinary body or person ever contacted Mr. Roberts or his counsel after saying, where are you, don't you want to come and make your case, something like that? I don't think so. There was a follow-up letter saying what happened, I think, a day or two later. But I don't believe there was anyone like, where are you, are you stuck in traffic or anything like that. Okay. Other questions by either of my colleagues? All right, thank you very much. Thank you. All right, Mr. Franz, you don't have very much time, but we're going to give you a minute because we'd love to hear you talk. Oh, thank you, and I love to be here. So the time period was September 12 to December 6, the total band, not seven days. Oh, wait a minute, wait, wait, wait. You're saying that the total band, you couldn't talk to anybody, went from like three months, four months, and what are you relying on for that? The record. The fact that the interview in October told us we couldn't talk to anybody again. So the record. But the disciplinary hearings occurred even prior to that time, did they not? No, disciplinary hearing took place December 10. So you're saying that this total ban occurred all the way through the end of the disciplinary hearings? Yes, during the investigation. And you didn't talk to any of the witnesses that your client thought would be worth talking to? I didn't talk to any of the witnesses. My second point is if you look at ER 105, I requested the band to be lifted, and this is an email from Kathy Peck, and she says, this sub is also declining to lift the restriction of Mr. Roberts from communicating with his co-workers during the investigation, and the date of that email was way beyond seven days. What date was it? It's 105, and I don't, the email doesn't, I don't have the, I'm sorry, it's going to be in October. Okay, so long before December. Yes. Two months before. So I did go to sub, and they went and lifted. Okay. Second point. We've let you go past, well past a minute. I think we have your points. Any additional questions by my colleague? Very well. We thank all counsel for the argument. The case of Roberts v. Springfield Utility Board is submitted.
judges: SMITH, FORREST, SUNG